UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK ENRIQUEZ G.C.,[1]<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER, et al.,<br>Respondents. | No. 1:26-cv-07942-TLN-SCR<br>A# 246-587-074<br>**RELEASE ORDER** |

This matter is before the Court on pro se Petitioner Frank Enriquez G.C.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed an Answer and supplement. (ECF Nos. 5, 6.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual Background

This matter arises out of Petitioner's challenge to his civil immigration detention. Petitioner entered the United States without admission and was encountered by immigration authorities on December 24, 2022. (ECF No. 5 at 2, 17.) Initially, immigration authorities detained Petitioner before releasing him into the community. (*Id.* at 2.)

For the last four years, Petitioner has lived and worked in the United States. Petitioner has worked in construction for the same employer for nearly three years. (ECF No. 1 at 10.) His employer describes him as "hardworking, dependable, and a valuable member of [the] team." (*Id.* at 10.) His co-worker describes Petitioner as a man of faith and says Petitioner is "respectful, [a] good hearted person . . . [and] a person of good character," whose absence is missed. (*Id.* at 11.) Petitioner submits additional letters from members of his community who vouch for his character and are personally willing to support him. (*Id.* at 12–13.)

Petitioner has no criminal history. (ECF No. 1 at 2; ECF No. 5 at 13, 15–18.)

On September 2, 2026, Petitioner was on his way to work when he was arrested during a routine traffic stop in Texas. (ECF No. 1 at 2; ECF No. 5 at 12.) He was transferred to immigration detention and Respondents initiated removal proceedings against him. (ECF No. 5 at 2, 6.) A warrant was not issued for Petitioner's arrest until the day after his detention on September 3, 2026. (ECF No. 6 at 3.) Respondents did not provide an initial custody determination until nearly a month after his detention on October 1, 2026. (*Id.*) Petitioner has not received any custody hearing, either pre- or post-arrest. (*See* ECF Nos. 1, 6.) And Respondents do not report scheduling any such hearing. (*See* ECF No. 6.)

Petitioner has now been detained for two months and he challenges the constitutionality of his detention. (ECF No. 1.)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure

release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner claims his detention without adequate procedural protections violates Fifth Amendment due process.[2] (ECF No. 1 at 3.) Respondents argue Petitioner is lawfully detained under 8 U.S.C. § 1226(a) and that § 1226(a)'s procedures are constitutional, but they make no argument as to Respondents' compliance with Fifth Amendment procedural due process or § 1226(a)'s procedural requirements. (*See* ECF No. 5.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas,* 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### A. Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of

---

[2] Finding relief warranted on procedural due process grounds, the Court declines to address Petitioner's additional claims in favor of judicial economy.

physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). An individual's liberty interest may be strengthened over time. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025).

Petitioner has a clear liberty interest in remaining free from detention. "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182 (D. Haw. 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Morrissey*, 408 U.S. at 481–82). Petitioner was released into the community in 2022. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987)) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause."). Petitioner has lived in the country for nearly four years, during which time he has established community ties and held stable employment. Accordingly, Petitioner has a clear interest protected by the Due Process Clause.

B. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. Despite his interest in maintaining his liberty, Petitioner has now been detained for two months, separated from his community, and unable to work. Accordingly, Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD, 2025 WL 3247258, at

*4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is significant given Petitioner has never received any opportunity to be heard as to the justification of his detention. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, immigration authorities necessarily determined Petitioner was not a danger to the community or a flight risk before releasing him in 2022. *See* 8 C.F.R. § 1236.1(c)(8). There is no alternate finding in the record, nor any argument that circumstances have changed, to override that finding. Nor do Respondents argue that Petitioner is a danger to the community or a flight risk. (ECF No. 5.) Additionally, Petitioner has no criminal history. (*See id.* at 13, 15–18.) Therefore, the risk that Petitioner is being detained without proper justification is high. Moreover, Petitioner has not had any opportunity to be heard as to his detention either pre- or post-arrest for two months, therefore, the probative value of additional procedural safeguards is high.[3] *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Finally, the government's interest in detaining Petitioner without any hearing is nil, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14,

---

[3] The record also shows that Respondents are not in compliance with 8 U.S.C. § 1226(a) and its implementing regulations, which require a Notice to Appear and warrant in advance of arrest, and an initial custody determination contemporaneous to arrest. *See Zurita Navarro v. Warden Ctrl. Valley Annex Det. Facility*, No. 1:26-CV-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026) (collecting cases and enumerating various procedural violations of § 1226(a), including failure to issue warrant and notice to appear prior to arrest and "failure to provide the petitioner with an initial custody determination either prior to or contemporaneously with detention"). Here, the Notice to Appear and warrant were issued after arrest, and the initial custody determination was not conducted until a month into Petitioners' detention. (ECF No. 5 at 6; ECF No. 6.)

2025). Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards. Custody determination hearings are routine processes for Respondents. Any delay in detention (if justified) for the time to provide pre-deprivation a hearing would have been minimal. Any burden associated with the provision of these processes does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation. Nor do Respondents make any argument as to burden. (ECF Nos. 5, 6.)

Under the *Mathews* factors, given Petitioner's prior release from immigration custody, Respondents were required to provide notice and a pre-deprivation hearing before a neutral decisionmaker. The U.S. Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Respondents do not argue that Petitioner should be a "special case." (*See* ECF No. 5.)

Yet, Respondents did not provide Petitioner with any notice or any custody hearing before his re-detention, nor have they provided any custody hearing in two months since his re-detention. Respondents thus violated the Fifth Amendment and Petitioner's procedural due process rights.

## IV. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (ECF No. 1) is hereby GRANTED. It is FURTHER ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Frank Enriquez G.C. (A# **246-587-074**) from custody under the same terms as his 2022 release. At the time of release, Respondents must return all of Petitioner's documents and possessions. Respondents shall file a **notice of compliance** with this provision **within two (2) court days** of this Order.

1. Respondents are ENJOINED from re-detaining Petitioner, while subject to 8 U.S.C. § 1226(a), absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where

the government must establish by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). At any such hearing, Petitioner shall be allowed to have counsel present. In the event Petitioner becomes subject to a final and executable order of removal, Respondents shall provide a minimum of ten-days' written notice of their intent to detain Petitioner for removal prior to detention. Such notice shall not be issued until the removal order becomes final and executable in accordance with 8 U.S.C. § 1231 and 8 C.F.R. § 1241.1.

2. The Clerk of the Court shall serve this Order on **California City Detention Facility**, enter judgment in favor of Petitioner, and close this case.

IT IS SO ORDERED.

DATE: November 23, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE